**KEYSTONE PLASTICS, INC., Plaintiff-Appellant-Cross Appellee,**

v.

**C & P PLASTICS, INC., et al., Defendants-Appellees-Cross Appellants.**

**No. 72–3430.**

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1975.

John Cyril Malloy, Miami, Fla., Howard C. Miskin, Rogers, Hoge & Hills, New York City, Moise W. Dennery, New Orleans, La., for plaintiff-appellant-cross appellee.

John H. Oltman, Fort Lauderdale, Fla., Hiram P. Settle, Jr., Bernard J. Cantor, Detroit, Mich., for defendants-appellees-cross appellants.

Before WISDOM and GOLDBERG, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge:

Tried by capable and diligent counsel, factual disputes pertaining to the manufacture of extruded polypropylene plastic bristles for use in mechanical street

sweeper brushes produced a record of immense volume [1] in the court below.

The resolution of such disputes and the legal questions arising therefrom by Judge King appear in his Findings of Fact and Conclusions of Law published in Keystone Plastics, Inc. v. C & P Plastics, Inc., 340 F.Supp. 55 (D.C.1972).

To avoid supererogation reference will be freely made to such published findings in addressing the issues formulated by appellant.[2] Of preliminary concern is the admitted adoption by the trial court of the findings and conclusions prepared by counsel for appellees [3] and entry thereof without prior notice to counsel for plaintiff.

■ This Court has consistently expressed its disapproval of the practice of unconditionally adopting findings submitted by one of the parties to the litigation. The reason should be self-evident. The reviewing court deserves the assurance that the trial court has come to grips with apparently irreconcilable conflicts in the evidence, such as appear in the case *sub judice,* and has distilled therefrom true facts in the crucible of his conscience.

Of course, in areas of highly specialized litigation the typical trial judge is apt to be unfamiliar with the nomenclature common to the art or science involved. In such cases he needs help in reducing his ultimate decision to accurate and understandable words.

As the organ of the court in Louis Dreyfus & Cie. v. Panama Canal Company, 298 F.2d 733, 738 (5th Cir. 1962), Judge Wisdom commented:

In analyzing the significance that should be attached to the adoption by the trial judge of findings drafted by one of the litigants, common sense may be a better guide than ideal decision-making. As an ideal matter it would be desirable for the trial judge to draft his own findings in every case. This would supply insurance, for the benefit of the appellate court, that the trial judge did indeed consider all the factual questions thoroughly and would guarantee that each word in the finding is impartially chosen. In the workaday world, however, it may often be necessary for a hardpressed district court to take assistance from counsel in articulating his decision. *This assistance may be especially helpful in a case involving complex and technical subject matter, as in patent cases, where the aid of a specialist may be but a shade short of indispensable.* In such cases it must be assumed that the trial judge considered the case from all angles and reached his decision independently *before* placing reliance on the proposed findings. The ultimate question that the judge must face is whether to enter judgment for plaintiff or defendant, and he must decide this question on his own before deciding which proposed findings to accept. [Emphasis added].

There is a technique utilized by trial judges which fairly accommodates this requirement of specialized assistance in the preparation of findings of fact in such cases to the imperative that such findings be his and his alone. Counsel for the party who is due to prevail in the tentative opinion of the court will be requested to submit proposed findings of fact and conclusions of law to the court and simultaneously to serve a copy thereof upon adverse counsel. Thereafter, at a hearing attended by counsel for all interested parties, the court will proceed to enter findings and conclusions as proposed or as appropriately modified.[4]

---

1. The record was shipped to the Clerk of this Court in five tightly packed cartons, each measuring 15" x 10" x 12".

2. Hereinafter referred to as plaintiff, its role in the court below.

3. Hereinafter referred to as defendants.

4. It is noted that on March 27, 1972, plaintiff filed a motion to amend and supplement Findings of Fact and Conclusions of Law accompanied by a memorandum in support thereof.

On April 12, 1972, defendants filed a brief and memorandum in opposition thereto.

■ But, contrary to the insistance of plaintiff, this Court is committed to the proposition that, even though the trial court has ignored this reiterated admonition and has uncritically accepted findings proposed by one of the parties, such findings must be tested by the standard of review mandated by Rule 52, F.R. Civ.P., 28 U.S.C.A.[5]

In the seminal case of Zenith Corp. v. Hazeltine, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969), that standard was clearly explicated:

> In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*. The authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence. The question for the appellate court under Rule 52(a) is not whether it would have made the findings the trial court did, but whether "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." [Citations omitted].

It would be a mistake to suppose that the "clearly erroneous" rule provides an escape valve for the reviewing court, for the key to its application is not the findings made by the court but the substantiality of the record evidence to support such findings. The frequently onerous task of canvassing the whole record when it is contended that certain findings are clearly erroneous is inescapable. In another context the Supreme Court has written:

> [A] reviewing court is not barred from setting aside a . . . decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when reviewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [Court's] view. Universal Camera Corp. v. Labor Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

Literally, hundreds of hours have been devoted to an analysis of the evidence admitted by the trial court in the case *sub judice*. It would unduly extend this opinion to discuss the evidence both supportive of and opposed to the critical Findings of Fact, numbered 12 through 76,[6] entered by Judge King.

### I. The Trade Secrets Claim.

Contending that the trial court erred in finding that none of its trade secrets were taken or used by defendants, plaintiff adduced evidence tending to paint a sordid picture of bribery and theft. It is accurately summarized in Judge King's Findings of Fact numbered 9, through the third sentence of Finding 13.[7]

No choice of laws problem is apprehended. Both the law of New Jersey,[8] where the piracy is said to have occurred, and that of Florida,[9] where its fruits were claimed to have been utilized, afford protection of trade secrets. Recently, in University Computing Co. v.

---

On July 6, 1972, after reciting that "Plaintiffs have [sic] moved to amend the final order in 38 particulars. The court having considered the aforesaid motion along with supporting and opposing memoranda of law, and having reconsidered the record in this cause," the court *partially* granted plaintiff's motion by entering an order amending in insubstantial particulars Findings of Fact Nos. 3(5), 70 and 74.

This post judgment procedure is obviously an inadequate substitute for the technique suggested by the court.

**5.** Ag Pro. Inc. v. Sakraida, 474 F.2d 167 (5th Cir. 1973); Railex Corporation v. Speed Check Co., 457 F.2d 1040 (5th Cir. 1972).

**6.** 340 F.Supp. at 60 through 73.

**7.** 340 F.Supp. at 59, 60.

**8.** N.J.Rev.Stat., Sec. 2A:119–51; Sun Dial Corp. v. Rideout, 16 N.J. 252, 257, 108 A.2d 442, 446 (1954).

**9.** Pure Foods, Inc. v. Sir Sirloin, Inc., 84 So.2d 51 (Fla.Sup.Ct.1955); Renpak, Inc. v. Oppenheimer, 104 So.2d 642 (Fla.Dist.Ct. of App. 1958).

Lykes-Youngstown, 504 F.2d 518 (5th Cir. 1974), this court has articulated legal standards on protection of trade secrets.[10] It is reasonable to suppose that both New Jersey and Florida would apply these standards which were anticipated by the Supreme Court in Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), in holding that federal patent supremacy does not preempt state trade secret protection.

■ At trial, defendants adopted the strategy of compelling the witness, William Gould, in his oral testimony, to identify one by one the components of appellant's extrusion line which he regarded as plaintiff's trade secrets, and thereafter to demonstrate that all were commonly known and used in the art. Judge King dealt seriatim with the claims thus developed in his Findings of Fact, numbered 24 through 55.[11]

The thrust of plaintiff's argument here, and advanced in the court below, as recognized by Finding of Fact No. 48 [12] is that the trade secret for which it claims protection and which it insists was misappropriated by defendants is its entire, integrated line comprised of its unique combination of steps and equipment, rather than the components thereof viewed in isolation. That the whole of a manufacturing process may be greater than the sum of its parts is not the paradox it seems at first blush.

However, the court explicitly found that "Defendants extrusion line differs in every material detail from the line of Keystone. . . . In short, while there is a similarity in the general overall arrangement and processing, the two lines differ substantially in every material detail." [13] The court further found that ". . . Keystone's line and process were not a trade secret, the relevant information being known to the art, and furthermore, *it was not used by C & P.*" [14] [Emphasis added].

In assessing the substantiality of the foregoing ultimate fact findings, due consideration has been given to the personal observation and inspection by the trial judge of the extrusion line processes and techniques utilized by defendants.

In United States v. Stewart, 201 F.2d 135, 137 (5th Cir. 1953), this Court stated:

The observations made by the court from its physical inspection of the premises were for all purposes matters of evidence that were not and could not be set out in the record. . . . . In such a case, it is not within this court's province to substitute its finding of fact for those of the trial court, particularly since they are supported

---

10. "A trade secret is protected against illegal appropriation and commercial use by a competitor. The development of this area of the law has been progressive, and most jurisdictions have developed similar standards. What Georgia law exists in this area seems to follow the Restatement, Torts § 757. We so held in Water Services, Inc. v. Tesco Chemicals, Inc., 410 F.2d 163 (5th Cir. 1969).

"Under the Restatement § 757 formulation, a trade secret is defined as:

Any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.

In large measure the requirements simply are that 'the parties view the process or device as a secret and that the secret be revealed in confidence . . . .' *Water Services, supra,* 410 F.2d at 172.

"Liability attaches under the Restatement of one 'who discloses or uses another's trade secrets without a privilege to do so . . .

(a) . . . discovered the secret by improper means or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the (owner of the secret) in disclosing the secret to him, or

(c) he learned from a third person with notice of the facts that it was a secret and that the third person's disclosure of it was otherwise a breach of his duty to the (owner of the secret) . . . . '"

11. 340 F.Supp. at 64 through 69.

12. 340 F.Supp. at 67.

13. Finding of Fact 21(c), 340 F.Supp. at 63.

14. Finding of Fact 51, 340 F.Supp. at 68.

by substantial evidence and are not clearly erroneous.

Thus, the judgment of the Court that defendants are not liable to plaintiff under plaintiff's claim of misappropriation of trade secrets is firmly grounded upon dispositive findings of fact, supported by substantial evidence in the record, which are not clearly erroneous, and accordingly it is affirmed.

## II. Patent No. 3,216,038 ("Treated Center").

■ Severely capsulated, the teaching of plaintiff's '038 patent is that applying a compressive force or heat to the center of a plastic bristle will disorient the molecules in that portion so that the bristle may be easily bent but will not be weakened at that point.

Instructed by the landmark case of Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the trial court made the required basic factual inquiries. The scope and content of the prior art were determined; differences between the prior art and claims 1, 2, 3 and 5 at issue were ascertained, and the level of ordinary skill in the pertinent art was resolved. Finally, the Court arrived at the critical finding of fact that the differences between the claims in issue and the pertinent prior art would have been obvious to a person reasonably skilled in that art. He thereafter concluded as a matter of law that the patent was invalid under the provisions of 35 U.S.C. § 103.[15]

A careful review of the entire record confirms the presence of abundant, substantial evidence to support the foregoing pivotal finding of fact. Therefore, the Court properly concluded that the patent was invalid as a matter of law.[16]

## III. Patent No. 3,330,721 (Remelt Surface).

■ Patent No. '721 teaches the forming of a homogeneous *remelted* surface upon the prior art fibrous linearly oriented polypropylene filament for the stated purpose of providing greater split and abrasive resistance.

Explicitly finding that defendants' bristle brushes are *annealed*, not *remelted*, the Court proceeded to its ultimate finding that defendants do not utilize the claimed invention and therefore do not infringe the patent in suit.[17] This finding is supported by substantial evidence and hence is not clearly erroneous. Indeed, at trial, the witness, William Gould, the patentee, admitted that, absent a *remelt* surface, there is no infringement, as demonstrated by the following question and answer:

Q. If I manufactured a bristle which did not have a remelted exterior casing, would I utilize the invention of Exhibit 4?

A. No.

## IV. Exclusion of Expert Testimony.

Professor Blake King, a chemical engineer, a member of the faculty of the University of Miami, at plaintiff's request, inspected, measured and analyzed the extrusion lines of the parties hereto. He was permitted to testify to facts re-

15. The Court further concluded that the claims in suit of plaintiff's '038 patent are invalid for lack of novelty and for prior public use (35 U.S.C. § 102). Affirmance of the judgment of the trial court that such claims are invalid for "obviousness" under 35 U.S.C. § 103 eliminates the necessity of reviewing other grounds of invalidity and the facts upon which they are premised. No opinion is intimated with respect thereto.

16. Alternatively, the trial court found that defendants had not infringed the patent. At trial it was admitted that their loose bristle does not infringe, having no center treatment. But it was strenuously urged that their mats do infringe. Agreement with the conclusion that the claims of the patent in suit are invalid obviates the necessity of reviewing the conclusion of the Court that such claims were not infringed and the findings of fact upon which it was posited. The silence of this opinion in this respect carries no implication of approval of the legal principles applied by the Court in arriving at its holding of noninfringement.

17. Findings of Fact Nos. 74 and 76, 340 F.Supp. at 73.

lated to heat, speed and space relationships, the physical layout of the apparatus and the physical properties of the products running through the lines. He was not permitted to express an opinion as to the similarities and relationship of the strands passing through such extrusion lines. Appellant insists that thereby the Court committed reversible error.

■ In Stancill v. McKenzie Tank Lines, Inc., 497 F.2d 529 (1974), this Court recognized:

> [T]hat the admission or exclusion of expert testimony is a matter within the sound judicial discretion of the trial judge. Only if we determine that his decision is "manifestly erroneous" may we find that he has abused his discretion. . . . Salem v. United States Lines Co., 1962, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313, 317; Scott v. Fancher, 5th Cir. 1966, 369 F.2d 842, 844.

■ Viewed in this perspective, the rejection of this opinion testimony clearly does not require reversal. By Professor King's own admissions on the record, he is not an expert in the art of plastic production equipment, and he had had no prior experience in testing bristles or propylene plastics.

### The Cross-Appeal

**I. Failure of the Court to Pass Upon the Validity of Patent No. 3.**

Contending that the trial court should have "followed the 'better practice' specified in Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330 [65 S.Ct. 1143, 89 L.Ed. 1644] (1945), and declared plaintiff's '721 (Remelt Patent) invalid, as well as not infringed," defendants request this Court to mandate invalidity of such patent at this level. That will not at all do.

It is unnecessary to re-examine in depth cases from this Court involving the appellate function when the trial court has adjudicated both the issue of validity *vel non* and that of infringement *vel non* of a patent upon supportive findings of fact and conclusions of law.[18] In the case *sub judice* the lower court entered no findings of fact remotely related to the validity of the patent although they were prepared by counsel for cross-appellants. Nor did the trial judge pass upon this issue expressly or *sub silentio.*

■ In effect, defendants invite this court to try *de novo* the issue of validity, to distill from the record credible evidence which it regards as sufficient to overcome the presumption of validity attending the issuance of the patent,[19] to conclude that the patent is evidently invalid[20] and to enter a judgment which,

---

**18.** Brose v. Sears, Roebuck and Company, 455 F.2d 769 (5th Cir. 1972). (The district court held the patent in suit invalid and not infringed); Marvin Glass & Associates v. Sears, Roebuck and Company, 448 F.2d 60 (5th Cir. 1971). (The district court held the patent in suit valid but not infringed); Fraser v. City of San Antonio, Texas, 430 F.2d 1218 (5th Cir. 1970). (The district court held the patent in suit invalid and not infringed); Beckman Instruments, Inc. v. Chemtronics, Inc., 428 F.2d 555 (5th Cir. 1970). (The district court held the patent valid but not infringed).

**19.** 35 U.S.C. § 282; Beckman Instruments, Inc. v. Chemtronics, 428 F.2d 555, 557 (5th Cir. 1970).

**20.** If, as the patent bar seems to read them, the cases cited in Note 18, *supra,* stand for the proposition that once the trial court finds

that the patent in suit was not infringed it is free to ignore the issue of validity unless such patent is "evidently invalid," cryptic guidance is afforded the district courts in this circuit.

The interplay of Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 1145, 89 L.Ed. 1644 (1945), and Harries v. Air King Products Co., 183 F.2d 158, 163 (2d Cir. 1950), provides a felicitous guideline for trial courts.

In *Sinclair & Carroll Co., supra,* there is an admonition implicit in the statement: "[T]he District Court in this case followed what will usually be the better practice by inquiring fully into the validity of this patent."

In Harries v. Air King Products Co., *supra,* Judge Learned Hand expressed his understanding of the practical implementation of such admonition as follows: "We hold that it is open to a court to proceed as is most convenient, subject to the exception that,

in its opinion, the trial judge should have entered in the first instance. This incredible invitation is declined.

## II. The Award of Attorneys' Fees to Cross-Appellants.

Defendants appeal from the district court's denial of their motion for an award of attorneys' fees. This is a short horse soon curried. The following quotation from Williamson-Dickie Mfg. Co. v. Hortex, Inc., 504 F.2d 983 (5th Cir. 1974), by substituting Keystone Plastics, Inc. for Williamson-Dickie, fits this case like a glove.

Under 35 U.S.C. § 285, the court has discretion to award attorneys' fees to the prevailing party in exceptional cases. In this case, the district court refused to hold that this was an exceptional case within § 285, and did not award attorneys' fees. We, as an appellate court, cannot lightly overturn that decision. "The law placing, as it does, the discretion in the trial court to determine . . . whether the case is an exceptional one so that attorneys' fees should be allowed, appellate courts ought not to and will not interfere with the exercise of such discretion. Indeed, they may not do so unless there is such a clear abuse as to show that discretion was not exercised, or unless it is plain that the trial court's decision is based on an erroneous concept of law." Graham v. Jeoffroy Mfg., 5th Cir. 1958, 253 F.2d 72, 78 (Tuttle, J.).

It is our conclusion that the district court did not abuse its discretion in refusing to award attorneys' fees. Our review of the record provides no indication that Williamson-Dickie has not proceeded in good faith in this litigation, or in its dealings with the Pat-

ent Office. Under these circumstances, the trial court properly refused to award attorneys' fees. Garrett Corp. v. American Flight Systems, Inc., 5th Cir. 1974, 502 F.2d 9.

Affirmed on appeal and cross-appeal. Costs taxed to appellant.

though the defendant has not infringed, claims may be so evidently invalid that the court should so declare."

To determine the issue of infringement inevitably the trial court must construe the claims of the patent in suit against the teaching of the prior art. If it is clear at that point that such patent is invalid, the court should so declare it. It should then proceed to determine the issue of infringement so that

the litigation may come to an end at the appellate level.

If, however, as was the posture of the case relating to plaintiff's '721 patent, it is crystal clear that the patent in suit was not infringed, and defendant has not produced sufficient evidence to overcome the presumption of validity, it would be an exercise in futility for the trial court to labor such issue.