YANCE, Circuit Judge:
 

 Appellant Colony Square Company contends that certain orders issued in this case should be vacated and asks that the bankruptcy judge be disqualified because of improprieties in the manner in which he prepared these orders.
 
 [1]
 
 Although we strongly disapprove of the bankruptcy judge’s methods, the record in this case does not warrant overturning the lower court’s judgment.
 

 I.
 

 The relevant facts, as found by the district court, are not in dispute. Colony Square Company (Colony) has been in bankruptcy proceedings in the United States District Court for the Northern District of Georgia since 1975. This matter was presided over in the Bankruptcy Court by Judge Hugh Robinson. The central issue in the bankruptcy proceedings concerned the right to ownership and control of the Colony Square Complex (the Complex), a large multi-use Atlanta real estate development with a fair market value substantially in excess of $100,000,000.
 

 In 1984, appellee Prudential Insurance Company of America (Prudential) moved to compel Colony’s compliance with the Chapter XII Plan under which Prudential would obtain title to the Complex. This motion was extensively briefed by both parties. A final hearing on Prudential’s motion to enforce the Plan was held by Judge Robinson
 
 *274
 
 on June 22, 1984. The hearing lasted for almost two and one-half hours. Later that day, Judge Robinson telephoned Francis M. Bird, Jr., lead counsel for Prudential. The judge told Bird that he intended to rule in favor of Prudential. Judge Robinson outlined what he wished his order to say and asked Bird to draft it. That evening a lawyer from Mr. Bird’s law firm, Alston & Bird, delivered a proposed order to Judge Robinson. Following some minor typographical corrections, Judge Robinson signed the order drafted by Prudential’s counsel. Colony was not notified of these
 
 ex •parte
 
 contacts between Prudential’s lawyers and Judge Robinson. Colony also was not informed that Prudential’s lawyers had drafted the opinion issued by the court.
 

 The court’s orders were ‘ghostwritten’ on at least two other occasions. In August 1984, Colony filed a written motion to disqualify Judge Robinson on the grounds of alleged bias.
 
 [2]
 
 A hearing was held on September 17, 1984. On October 19, 1984, Judge Robinson called Frank Bird and requested that his firm prepare an opinion denying this motion. During their conversation, Mr. Bird took notes as to what the judge indicated should be covered in the decision. Based on these instructions, Alston & Bird prepared a lengthy opinion, which the judge signed. Alston & Bird also was contacted in mid-November by Judge Robinson to draft the denial of Colony’s motion for reconsideration of the judge’s award of attorneys’ fees to Prudential. Once again, neither Judge Robinson nor Prudential notified Colony of the
 
 ex parte
 
 communications or the role played by Alston & Bird in drafting these opinions. It was not until months later that Colony’s lawyers first learned that Judge Robinson had not drafted these three orders.
 

 On learning that Alston & Bird had drafted these orders, Colony reasserted its motion for disqualification and the other relief sought here. The district court permitted Colony to undertake expedited discovery on this motion, and required Judge Robinson to answer written interrogatories. A five day evidentiary hearing was then conducted by the district court. The court also directed the parties to submit pre- and post-hearing briefs. On May 9, 1986, the district court issued a fifty-one page opinion denying Colony’s motion for relief. In this opinion the district court made detailed findings concerning the facts surrounding the issuing of the bankruptcy judge’s orders and their discovery by Colony’s lawyers.
 
 [3]
 
 The district court then ruled that Colony had not been denied due process, noting that Colony was given notice of pending issues and an adequate opportunity to present its arguments prior to a decision being made by Judge Robinson. The district court dismissed as contrary to the evidence Colony’s contentions that it had been prejudiced by Alston & Bird’s preparation of orders for Judge Robinson. The district court emphasized that it believed the orders were correct as a matter of law when it had originally reviewed them and that, after examining them anew in light of Colony’s motion, it “continues to hold this belief.”
 
 [4]
 

 II.
 

 This circuit and other appellate courts have repeatedly condemned the ghostwriting of judicial orders by litigants.
 
 See, e.g., Keystone Plastics, Inc. v. C & P Plastics, Inc.,
 
 506 F.2d 960 (5th Cir.1975);
 
 Bradley v. Maryland Casualty Co.,
 
 382 F.2d 415 (8th Cir.1967);
 
 Chicopee Mfg. Corp. v. Kendall Co.,
 
 288 F.2d 719 (4th Cir.),
 
 cert. denied,
 
 368 U.S. 825, 82 S.Ct. 44, 7 L.Ed.2d 29 (1961). The cases admonishing trial courts for the verbatim adoption
 
 *275
 
 of proposed orders drafted by litigants are legion.
 
 See, e.g., Anderson v. City of Bessemer, N.C.,
 
 470 U.S. 564, 105 S.Ct. 1504, 1510-11, 84 L.Ed.2d 518 (1985);
 
 Keystone Plastics, Inc. v. C & P Plastics, Inc.,
 
 506 F.2d at 962;
 
 Louis Dreyfus & Cie. v. Panam
 
 a
 
 Canal Co.,
 
 298 F.2d 733, 737 (5th Cir.1962);
 
 Cuthbertson v. Biggers Bros., Inc.,
 
 702 F.2d 454, 458-59 (4th Cir.1983);
 
 In re Las Colinas, Inc.,
 
 426 F.2d 1005, 1009 & n. 4 (1st Cir.1970),
 
 cert. denied,
 
 405 U.S. 1067, 92 S.Ct. 1502, 31 L.Ed.2d 797 (1972). The bankruptcy judge here compounded this error by failing to give Colony an opportunity to respond to Prudential’s proposed orders.
 
 See Keystone Plastics, Inc. v. C & P Plastics, Inc.,
 
 506 F.2d at 962 & n. 4;
 
 Home Box Office, Inc. v. FCC,
 
 567 F.2d 9, 55-59 (D.C.Cir.),
 
 cert. denied,
 
 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977).
 
 [5]
 

 The dangers inherent in litigants ghostwriting opinions are readily apparent. When an interested party is permitted to draft a judicial order without response by or notice to the opposing side, the temptation to overreach and exaggerate is overwhelming.
 
 See Anderson v. City of Bessemer City, N.C.,
 
 105 S.Ct. at 1511;
 
 [6]
 

 Cuthbertson v. Biggers Bros., Inc.,
 
 702 F.2d at 459.
 
 [7]
 
 The proposed order or opinion serves as an additional opportunity for a party to brief and argue its case and thus is unfair to the party not accorded an opportunity to respond.
 
 See In re Wisconsin Steel Corp.,
 
 48 B.R. 753, 761 (N.D.Ill.1985).
 
 [8]
 
 The quality of judicial decisionmak-ing suffers when a judge delegates the drafting of orders to a party; the writing process requires a judge to wrestle with the difficult issues before him and thereby leads to stronger, sounder judicial rulings.
 
 See James v. Stockham Valves & Fittings Co.,
 
 559 F.2d 310, 314 n. 1 (5th Cir.1977),
 
 cert. denied,
 
 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978);
 
 [9]
 

 Keystone Plastics, Inc. v. C & P Plastics, Inc.,
 
 506 F.2d at 962;
 
 [10]
 

 Louis Dreyfus & Cie. v. Panama Canal Co.,
 
 298 F.2d at 737.
 
 [11]
 
 In addition,
 
 *276
 
 the
 
 ex parte
 
 communications occasioned by this practice create an obvious potential for abuse.
 
 See In re Paradyne Corp.,
 
 803 F.2d 604, 612 (11th Cir.1986);
 
 [12]
 

 In re Wisconsin Steel Corp.,
 
 48 B.R. at 760-61.
 
 [13]
 

 III.
 

 The fact that a judge allowed a litigant to draft the court’s orders without notice to the opposing party does not automatically invalidate these orders, however.
 
 See, e.g., Rushen v. Spain,
 
 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)
 
 (ex parte
 
 communication between trial judge and juror held to be harmless error);
 
 United States v. Adams,
 
 785 F.2d 917, 920-21 (11th Cir.),
 
 cert. denied,
 
 - U.S. -, 107 S.Ct. 650, 93 L.Ed.2d 706 (1986)
 
 (ex parte
 
 conference between judge, witness and government held constitutional);
 
 Kaspar Wire Works, Inc. v. Leco Engineering & Mach.,
 
 575 F.2d 530, 543 (5th Cir.1978) (trial court’s verbatim adoption of litigant’s proposed findings subject to “clearly erroneous” standard of review);
 
 Keystone Plastics, Inc. v. C & P Plastics, Inc.,
 
 506 F.2d at 963 (trial court’s adoption of findings and conclusions drafted by litigant without notice to opposing party did not mandate a different standard of review);
 
 Simer v. Rios,
 
 661 F.2d 655, 679-81 (7th Cir.1981),
 
 cert. denied,
 
 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982)
 
 (ex parte
 
 contacts between judge and litigant held not to violate due process).
 
 [14]
 
 Such orders will be vacated only if a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair.
 
 Margoles v. Johns,
 
 660 F.2d 291, 296 (7th Cir.1981),
 
 cert. denied,
 
 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982);
 
 see generally Aetna Life Ins. Co. v. Lavoie,
 
 475 U.S. 813, 106 S.Ct. 1580, 1584-85, 89 L.Ed.2d 823 (1986).
 

 Having reviewed the record in this case, we conclude that Colony was not denied due process.
 
 [15]
 
 This result is compelled by two salient facts. First, Judge Robinson was found to have already reached a firm decision before asking Alston & Bird to draft the proposed orders.
 
 [16]
 
 Judge Robinson’s decision followed a number of hearings on these issues where the judge played an active and inquiring role. He was not swayed or influenced by Prudential’s proposed orders; rather, Judge Robinson directed the Alston & Bird lawyers to draft orders which reached a particular result and discussed specific points. We therefore conclude that he did not abdicate his adjudicative role.
 
 See Anderson v. City of Bessemer City, N.C.,
 
 105 S.Ct. at 1511 (findings adopted verbatim from litigants given full deference where “court itself provided the framework for the proposed findings”);
 
 Phillips v. Amoco Oil Co.,
 
 799 F.2d 1464, 1472 (11th Cir.1986) (no due process violation where opinion was drafted by law clerk with conflict of interest since judge had already decided upon result which he announced at oral argument);
 
 Fields v. City of Tarpon Springs,
 
 
 *277
 

 Fla.,
 
 721 F.2d 318, 320-21 (11th Cir.1983) (factual findings adopted verbatim from litigants affirmed where “district judge had command of the legal issues and the evi-dentiary proceedings, ... was an active arbiter of the dispute, [and] did not abdicate his adjudicative role”);
 
 Odeco, Inc. v. Avondale Shipyards, Inc.,
 
 663 F.2d 650, 652-53 (5th Cir.Unit A 1981) (findings adopted verbatim from litigant’s given full deference where comments made in court by judge and overall record reflects that the trial court fully comprehended the factual and legal issues and adequately performed the “decision reaching process”).
 
 [17]
 

 Second, Colony has had ample opportunity to present its arguments. The orders in question were reviewed by the district court and affirmed by that court. The order granting Prudential title also was appealed to this court, where we held that the bankruptcy court’s ruling was correct as a matter of law.
 
 In re Colony Square Co.,
 
 779 F.2d 653 (11th Cir.),
 
 cert. denied,
 
 - U.S. -, 107 S.Ct. 95, 93 L.Ed.2d 46 (1986).
 
 [18]
 
 In ruling on the motion now before this court, the district court reexamined the merits of the challenged orders. The district court again concluded that these orders were correct as a matter of law. The independent consideration and analysis given by the district court to those orders, both on direct review and during the subsequent proceedings on this motion, serves to correct any errors in the procedure used by the bankruptcy judge. It therefore cannot be held that Colony was denied a meaningful opportunity to be heard.
 
 See Mullane v. Central Hanover Bank & Trust Co.,
 
 339 U.S. 306, 313-14, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950);
 
 cf. Barry v. United States,
 
 528 F.2d 1094, 1100 (7th Cir.),
 
 cert. denied,
 
 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976).
 
 [19]
 

 IV.
 

 The bankruptcy judge’s actions in preparing these orders have little to commend them. Nevertheless, since the judge had already reached firm, final decisions and since these decisions were determined to be correct as a matter of law by the district court and appellate courts, we conclude that the process by which the orders were prepared did not prejudice the appellant and was not fundamentally unfair.
 

 AFFIRMED.
 

 [1]
 

 . Appellant also requests that the court disqualify Alston & Bird and assess attorneys’ fees and expenses against Prudential.
 

 [2]
 

 . It should be noted that Colony moved to disqualify Judge Robinson on a number of occasions during the course of this lengthy litigation. These motions were consistently denied by Judge Robinson and the district court.
 

 [3]
 

 . A much abridged version of these facts is set out above.
 

 [4]
 

 . The district court also expressed serious reservations about the timeliness of Colony's motion. The court noted that even while a prior disqualification motion was pending, Colony’s lawyers knew that Judge Robinson had previously requested Alston & Bird to prepare a number of orders and suspected that the orders challenged here had been written by Alston & Bird.
 

 [5]
 

 . The Model Code of Professional Responsibility EC 7-35 (1980) provides:
 

 All litigants and lawyers should have access to tribunals on an equal basis. Generally, in adversary proceedings a lawyer should not communicate with a judge relative to a matter pending before, or which is to be brought before, a tribunal over which he presides in circumstances which might have the effect or give the appearance of granting undue advantage to one party. For example, a lawyer should not communicate with a tribunal by a writing unless a copy thereof is promptly delivered to opposing counsel or to the adverse party if he is not represented by a lawyer. Ordinarily an oral communication by a lawyer with a judge or hearing officer should be made only upon adequate notice to opposing counsel, or, if there is none, to the opposing party. A lawyer should not condone or lend himself to private importunities by another with a judge or hearing officer on behalf of himself or his client.
 

 [6]
 

 . "We are also aware of the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor.”
 
 Anderson,
 
 105 S.Ct. at 1511.
 

 [7]
 

 . "The adversarial zeal of counsel for the prevailing party too often infects what should be disinterested findings to entrust their preparation to the successful attorney."
 
 Cuthbertson,
 
 702 F.2d at 459.
 

 [8]
 

 . "The opinion was, in effect, an additional brief by Sweig. ‘A lawyer may not properly give a memorandum to the trial judge without a copy to the other side, even where the court asked for it.’ Drinker,
 
 Legal Ethics,
 
 p. 78 (Columb.Univ. Press, 4th Printing, 1963) ... [I]t is clear that each side should be given the same opportunity to persuade.”
 
 In re Wisconsin Steel Corp.,
 
 48 B.R. at 761.
 

 [9]
 

 . ‘“[T]he appellate court can feel slightly more confident in concluding that important evidence has been overlooked or inadequately considered’ when factual findings were not the product of personal analysis and determination by the trial judge.”
 
 James,
 
 559 F.2d at 314 n. 1 (quoting
 
 Louis Dreyfus & Cie. v. Panama Canal Co.,
 
 298 F.2d 733, 738 (5th Cir.1962)).
 

 [10]
 

 . "The reviewing court deserves the assurance that the trial court has come to grips with apparently irreconcilable conflicts in the evidence ... and has distilled therefrom true facts in the crucible of his conscience.”
 
 Keystone Plastics,
 
 506 F.2d at 962.
 

 [11]
 

 . “[W]e must say that findings and conclusions which represent the independent judicial labors and study of the district judge are more helpful to this Court.”
 
 Dreyfus,
 
 298 F.2d at 737 (quoting
 
 Kinnear-Weed Corp. v. Humble Oil & Refining Co.,
 
 259 F.2d 398, 401 (5th Cir.1958),
 
 cert. denied,
 
 361 U.S. 903, 80 S.Ct. 210, 4 L.Ed.2d 158 (1959)).
 

 [12]
 

 .
 
 “Ex parte
 
 communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing 'requires a reasonable opportunity to know the claims of the opposing party and to meet them.”'
 
 Paradyne,
 
 803 F.2d at 612 (quoting
 
 Morgan v. United States,
 
 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938)).
 

 [13]
 

 . "A judge should ... neither initiate nor consider
 
 ex parte ...
 
 communications concerning a pending or impending proceeding.” Code of Judicial Conduct for United States Judges Canon 3(A)(4) (1979).
 

 [14]
 

 . Appellant also contends that Judge Robinson was obligated to recuse himself sua sponte pursuant to 28 U.S.C. § 455(a). Appellant argues that the ex parte communications and ghostwritten opinions raise the "appearance of impropriety.” We find this claim to be without merit. Our review of the case law reveals no case applying § 455(a) to this type of circumstance; this provision has been uniformly applied to instances where judges have had financial or personal conflicts of interests.
 
 See generally
 
 C. Wright, A. Miller & E. Cooper,
 
 Federal Practice and Procedure
 
 § 3549 (1984).
 

 [15]
 

 . As the Supreme Court has noted, “[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level.”
 
 FTC v. Cement Institute,
 
 333 U.S. 683, 702, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948).
 

 [16]
 

 . Appellant challenges this finding of fact. The affidavits and testimony of Judge Robinson and the lawyers involved, however, clearly supports the district court’s finding that the bankruptcy judge had reached a firm decision prior to calling Prudential's lawyers. There is no evidence to indicate that this finding was clearly erroneous.
 

 [17]
 

 .The "tentative” nature of the bankruptcy judge's views contributed to the vacating of the ghostwritten orders and disqualification of the judge in
 
 In re Wisconsin Steel Corp.,
 
 48 B.R. 753 (N.D.Ill.1985). There, the district court found possible prejudice because the proposed orders — submitted without notice — may have influenced the judge.
 
 Id.
 
 at 760-61. The lack of any evidence of independent analysis by the bankruptcy judge also led to the different result reached in that case. To the extent that
 
 In re Wisconsin Steel Corp.
 
 implies that ghostwritten opinions are per se invalid or mandate disqualification of the offending judge and lawyers, we disagree.
 
 See In re Cenco Inc. Securities Litigation,
 
 642 F.Supp. 539, 542-43 (N.D.Ill.1986).
 

 [18]
 

 . In affirming the lower court's judgment, we relied principally on our reading of the Supreme Court's decision in
 
 Central Trust Co.
 
 v.
 
 Official Creditors’ Committee,
 
 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982).
 
 See In re Colony Square Co.,
 
 779 F.2d at 655.
 

 [19]
 

 . As Prudential points out in its brief, this dispute has visited two state courts, two bankruptcy courts, two district courts, two United States Courts of Appeal, and three times in the United States Supreme Court during its long and litigious history.