95 F.3d 1156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CALIFORNIA OFFSET PRINTERS, INC., dba California Offset
Printers, Plaintiff-Appellant,
v.
HAMPTON INTERNATIONAL COMMUNICATIONS, INC., dba Hampton
International; Lee M. Oser, Jr., Defendants-Appellees.
 No. 94-56606.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1996.
Decided Aug. 27, 1996.
 
 Before: HALL, O'SCANNLAIN and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 California Offset Printers, Inc. ("COP") appeals the district court's judgment in favor of Hampton International Communications, Inc. ("Hampton") and its CEO, Lee Oser, Jr., in COP's diversity action for collection and breach of contract arising out of its agreement to print and to deliver trade show publications for Hampton.
 
 
 3
 * The district court adopted Hampton's proposed findings verbatim.[1] Most courts have expressed their disapproval of the practice of verbatim adoption. E.g. Hagans v. Andrus, 651 F.2d 622 (9th Cir.), cert. denied, 454 U.S. 859 (1981); Ramey Constr. Co. v. Apache Tribe, 616 F.2d 464, 466-67 (10th Cir.1980); Keystone Plastics v. C & P Plastics, 506 F.2d 960, 962. Nevertheless, the Supreme Court has stated that "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson, 470 U.S. at 572. Many circuits take a middle-level approach to review of adopted findings which is consistent with the Supreme Court's application with expressed reservations. The Fifth, Third, and Eleventh Circuits, for instance, take into account the district court's lack of personal attention to factual findings in applying the clearly erroneous rule. Amstar Corp v. Domino's Pizza, 615 F.2d 252, 258 (5th Cir.), cert. denied, 449 U.S. 899 (1980); Schlensky v. Dorsey, 574 F.2d 131, 149 (3d Cir.1978); See generally, Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting former 5th Circuit precedent).
 
 
 4
 This circuit takes an even more critical approach. We have stated that "[w]holesale adoption of the prevailing party's proposed findings" calls for "more careful scrutiny" due to "the possibility that there was insufficient independent evaluation of the evidence." Photo Electronics Corp. v. England, 581 F.2d 772, 776-77 (9th Cir.1978). We have also stated that "[t]he verbatim adoption of findings suggested by a party is not objectionable ... so long as those findings are supported by the record." Unt v. Aerospace Corp., 765 F.2d 1440, 1445 (9th Cir.1985).
 
 
 5
 The United States Supreme Court has emphasized the importance of compliance with the dictates of Federal Rule of Civil Procedure 52(a). That Rule provides: "Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."
 
 
 6
 COP argues that the findings of fact are not supported by the record, and therefore must be set aside as "clearly erroneous." In fact, COP contends that the record supports its claim that it performed its obligations under the contract, or in the alternative, substantially performed, and that any failure of performance was due to Hampton's own acts.
 
 
 7
 After examining the record, we conclude that the evidence does not support the findings in their entirety.
 
 1. FINDING OF FACT NO. 2
 
 8
 The district court found that "show attendees will read the newspaper during breakfast, and prior to their going to the Convention Center ... [and that] once in the Convention Center, they will acquire a copy of the paper, but are unlikely to read it during show hours." (CR 56 at 2:11-14). COP argues that there was absolutely no evidence presented as to these matters at trial, while Hampton insists that Oser's testimony concerning his experience with trade shows is sufficient testimony to support this finding of fact.
 
 
 9
 The record indicates that Oser testified only as to the fact that "more than 50 percent of the copies are distributed door-to-door at the convention hotels because the advertisers wish to reach these people early in the morning before they formulate [ ] their plans for the day." RT: 113:14-17. Although this testimony indicates the importance of reaching the attendees early in the morning, it does not support a finding that attendees are unlikely to read the newspaper during show hours.
 
 2. FINDING OF FACT NO. 5
 
 10
 Noting that COP's sold orders, production order, and invoices list different numbers of copies to be printed and delivered, the district court found that "appellants records are ... inconsistent." This finding is not supported by the record. Testimony was offered at trial (RT at 40:12-18) which explains why different amounts are listed for delivery and printing. Moreover, no testimony was offered at trial to prove that the district amounts were ever alleged to be the same amounts. Although the error is probably harmless, it supports COP's contention that these findings do not represent the independent findings of the court.
 
 3. FINDING OF FACT NO. 6
 
 11
 The district court found that "Hampton was not aware that [COP] was using a third party to print and bind the outserts." (CR 56 at 3:13-14). There is conflicting testimony on this issue. COP employee Neckameyer testified that he was in contact with Hampton representatives both prior to and during the time the work was being performed by a third party binder (RT at 82:19-25; 71:23-25; 72:1-6; 73:12-21). Oser testified that he was not aware of the third party printer until calling COP to inquire about the delay, although his comments suggest that his employee merely failed to inform him of the third party printing and binding. This contention is supported by the fact that there was no direct testimony by any of Hampton's witnesses indicating that no one from the company was made aware of the subcontract work. Despite two permissible views of the evidence, the balance is tipped toward Hampton's probable awareness. Accordingly, the finding appears to be erroneous.
 
 4. FINDING OF FACT NO. 7
 
 12
 The district court found that "there was not credible evidence that Hampton (Respondent) was warned of any risks inherent in using coated stock for the outsert." (CR 56 at 4:8-10). The testimony is conflicting with regard to this finding. Neckameyer testified that he was absolutely against the use of coated stock for the outserts and that he warned Hampton's sales representative Warren Katz and production manager Robert Kneller of the risks several times. (RT at 68:20-23; 71:23-25; 72:1-6; 74:1-25; 75:1-2:76:7-14; 78:13-25; 79:1-4: 79:22-25; 80:1-10; 82:7-25: 83:1-11; 97:13-19; 98:5-6). The only testimony offered by Hampton to rebut the testimony regarding conversations between Kneller and Neckameyer came from Oser who admitted only that Kneller spoke with Neckameyer (RT at 127:7-12). However, COP's estimate request, given to Hampton by Neckameyer prior to the execution of the contract, specifies the use of "60 # 4 coated" stock for the outserts. While a verbal warning against the use of coated stock may have accompanied this information, the estimate undermines Neckameyer's claims that he refused to consider printing on coated stock.
 
 
 13
 The critical nature of this finding to the judgment requires a remand, especially in light of the fact that there is conflicting evidence regarding the primary source of delay--the approval of coated stock. The finding states that Neckameyer admitted that COP's customer representative agreed to print on coated stock. There is no support for this assertion in the record. Both parties insist that a representative from the other party approved the use of the coated stock. The finding is further undermined by its reference to testimony which was stricken from the record. The finding states: "Lee Oser testified that he would not have jeopardized timely delivery of the C.E.S. Daily News which represented revenues of $600,000 for Hampton, for the single advertisement contained in the outsert." However, the record reflects the following exchange during Kazemzadeh's direct examination of Oser:
 
 
 14
 Q. Would you have risked the publication to produce the outcerts?
 
 
 15
 A. The outcert had a revenue value to Hampton International of approximately $15,000. Texas Instrument also had an interior page which had another value. No, sir. I'm not a fool. Had I suspected for a moment that there were problems, we would have printed the publication without the outcert belly band, eaten the $15,000 loss of revenue and not risked the displeasure of 50 advertisers who had spent 500-, $600,000. [sic].
 
 
 16
 THE COURT: Everything starting with "No, sir, I'm not a fool" will be stricken.
 
 
 17
 (RT at 125: 20-25; 126: 1-6). In light of the court's directive to strike this portion of Oser's testimony, we have little confidence in this finding of fact.
 
 5. FINDING OF FACT NO. 8
 
 18
 The district court found that COP "admitted that deliveries on days 1, 2, and 3 to Las Vegas were late and were short the required copies." (CR 56 at 4:13-14). This finding is clearly erroneous with respect to day three. As indicated by the testimony of Neckameyer and Oser, respectively, there were no significant problems with regard to delivery time (RT at 90:11-13) or shortage (RT at 122:3-9) on day three.
 
 
 19
 The rest of the finding, however, is supported by the record. The testimony at trial indicated that COP implicitly admitted that deliveries to Las Vegas were late on days one and two. Neckameyer testified that the dailies arrived in Las Vegas around daybreak and Leonis testified that he delivered the dailies at approximately 4:30, with another shipment arriving afterwards. These are admissions of untimeliness in light of Hampton's need for delivery to the hotels by 1:00 a.m..
 
 
 20
 As for shortages on days one and two, COP's testimony indicates that there were shortages (although COP argues that any shortages were due to Hampton's failure to heed the warnings of Neckameyer prior to and during the printing).
 
 6. FINDING OF FACT NO. 9
 
 21
 The district court found that "as a result of the late deliveries, the newspapers were not delivered to the rooms of the attendees during the first two days of the trade show," and that "as a result of plaintiff's failure to timely deliver the dailies, the newspapers were delivered to the Convention Center in the late afternoon." The finding is not entirely supported by the record. There was testimony indicating that the dailies were to be shipped by 5:30 p.m., that on days one and two of the convention they were not shipped until midnight, that it takes in excess of five hours to travel from Southern California to Las Vegas, and that it was necessary for the dailies to be delivered in Las Vegas no later than 1:00 a.m. to facilitate hotel delivery. However, there was also testimony indicating that the dailies were delivered to the Convention Center at noon on day two, and not late afternoon as stated in the finding. Moreover, in light of the fact that at least one of the shipments on day two arrived at 4:30 a.m., it is unclear as to why none of the dailies arrived at the Convention Center until noon. There was no testimony indicating that Manpower was prevented from performing its duties. Indeed, the testimony of Oser and Banarer indicated that no Hampton employee was even present at Manpower either at delivery or any time thereafter. (RT at 116:2-5). Thus, while some of the evidence supports the finding that the late delivery can be partially attributed to COP's actions, there are some indications that Manpower may have contributed to the delay.
 
 7. FINDING OF FACT NO. 10
 
 22
 The district court found that invoices No. 12747B and No. 12602 revealed discrepancies between the quantities of the news dailies shipped, delivered, and billed. COP challenges the portion of the finding that states "clearly, plaintiff's records indicate that it was not in control of this project." (CR 56 at 5:6-7). It is unclear as to how these invoices indicate a lack of control. Thus, that portion of the finding appears to be erroneous. Like Finding of Fact No. 5, the error is probably harmless but supports COP's contention that these findings indicate insufficient independent review by the district court.
 
 8. FINDING OF FACT NO. 11
 
 23
 COP challenges the finding that "Hampton paid substantial sums to the hotels and to Manpower for the anticipated distribution of the papers" (CR 56 at 5:9-10) and the finding that Hampton suffered a "loss of revenues from this source of $96,000" (CR 56 at 5:18-19). Although COP is correct that Hampton did not offer any proof of damages at trial, Oser did testify that approximately $12,000 was spent on hotel distribution. (RT:114:10). Moreover, with respect to the loss of revenue, he testified that Hampton suffered loss in advertising revenue for the Winter publication and that Texas Instruments did not advertise in four later shows (RT at 123:15-16). Thus, there was sufficient evidence to support this finding.
 
 9. FINDING OF FACT NO. 12
 
 24
 The district court found that "Hampton did not pay either of plaintiff's invoices, No. 12737B (Exhibit 4) or No. 12602 (Exhibit 5), because Hampton believed that (i) [COP] did not perform the material terms of its agreement with Hampton, and (ii) that [COP's] failure to perform damaged Hampton in an amount in excess at the combined amount of these invoices." (CR 56 at 5). Although damages were not argued at trial, Oser's testimony supports the finding that Hampton believed that COP did not perform the material terms of its agreement and that COP's failure to perform damaged Hampton. (RT at 125: 6-10). However, Oser's testimony does not support the belief that damages to Hampton by COP were in an amount in excess at the combined amount of the invoices, as he admitted that he had never sat down and quantified any figure that was lost with respect to any loss of advertising. (RT at 135: 1-4.)
 
 II
 
 25
 The district court's findings of fact do not sufficiently support the conclusion of material breach; that is, the conclusion that COP materially breached the contract rests on the possibly erroneous finding that it was COP which caused the delays in delivery. While this court may not duplicate the factfinding role of the trial court, it must be wary of conclusions of law based on tenuous findings. There is significant evidence in the record indicating that Hampton was warned about the coated stock, that Hampton's representative ordered its use, and that Hampton ordered COP to delay the shipping on the first two days to allow for more copies of the dailies to be sent.
 
 
 26
 We conclude that under the "close scrutiny" compelled in reviewing findings of fact adopted verbatim, the findings are not supported by the record and appear to reflect only the arguments of Hampton's attorney, rather than the independent findings of the trial court. This is evidenced by the fact that the district court did not even bother to change the names of the parties from the manner in which they were referenced in Hampton's proposed findings of fact; throughout its findings of fact and conclusions of law, the court refers to the parties as "Hampton" and "Plaintiff." The inclusion of evidence not presented at trial and the trial judge's failure to express any tentative views on the evidence during the trial also indicate "insufficient independent evaluation of the evidence."
 
 III
 
 27
 We conclude that sufficient doubt has been cast upon these findings to raise concerns about their credibility as a whole. The district court appears to have accepted uncritically the entire language of the proposed findings which, in and of itself, is prima facie evidence of doubtful merit given the lapse of fourteen months from the time in which the matter was tried. This failure independently to evaluate the evidence has rendered appellate review of the case all but impossible. Accordingly, we reverse and remand to the district court to permit the district judge to prepare new findings based on his direct review of the transcript and any notes he made during trial, particularly notes concerning his impressions of the credibility of witnesses' testimony. In doing so, the district court should pay particular attention to the key issue of who approved the use of coated stock.
 
 
 28
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The only difference between the two is in Item 12 of the Conclusions of Law wherein the Court ordered that both parties shall bear their own costs [ (CR 54) compared with (CR 56) ]