In re CHOCTAW BOUNDARY
FARMS, INC.

FEDERAL LAND BANK OF JACKSON

v.

CHOCTAW BOUNDARY FARMS, INC.

CHOCTAW BOUNDARY FARMS, INC.

v.

FEDERAL LAND BANK OF
JACKSON.

Bankruptcy No. 8500974JC.
Motion No. M85–308.

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

Jan. 29, 1987.

Marc E. Brand, Brand and Abbott, Jackson, Miss., for Federal Land Bank of Jackson.

Robert G. Nichols, Jr., Jackson, Miss., for Choctaw Boundary Farms, Inc.

---

## ORDER

EDWARD ELLINGTON, Chief Judge.

THIS MATTER came on for hearing upon Federal Land Bank of Jackson's Amended Motion for Relief From the Automatic Stay; Choctaw Boundary Farms, Inc.'s Response to the Amended Motion of Federal Land Bank; Choctaw Boundary Farms, Inc.'s Objection to the Claim of Federal Land Bank of Jackson and Federal Land Bank's Response to Choctaw Boundary Farms, Inc.'s Objection.

After reviewing the facts and considering the same, this Court finds that "cause" exists for the removal of the automatic stay and Federal Land Bank of Jackson's Motion is well taken and should be sustained. The Court further finds that due to the removal of the automatic stay, Choctaw Boundary Farms, Inc.'s Objection to the Claim of Federal Land Bank of Jackson is of no consequence at this time and is rendered a moot issue.

## STATEMENT OF THE CASE

On March 24, 1980, Jack M. Montgomery, Jr. (Montgomery) borrowed from the Federal Land Bank (FLB) the sum of $2,137,000.00. This indebtedness to the FLB is evidenced by a promissory note which was made, executed and delivered by Montgomery to FLB. The promissory note provided that Montgomery would pay the principal with interest at the rate of 10 per cent per annum by annual installments of $218,528.34 beginning on the 1st day of April, 1981, and continuing until fully paid on the 1st day of April, 2020.

In order to secure the indebtedness to the FLB, Montgomery executed a deed of trust on 1,659 acres of real estate and improvements located in Sunflower County, Mississippi. At the time of the hearing, there remained approximately 1,655 acres under the deed of trust after certain property had been released by FLB. Montgomery owned 21,370 shares of stock in FLB with a par value of $106,850, which he also pledged to FLB to secure the promissory note.

Montgomery paid the installments provided for in the note for the years 1981 thru 1984 but has not paid the April 1, 1985 and April 1, 1986 installments.

After Montgomery failed to pay the April 1, 1985 installment, demand was made upon him by the FLB. Subsequent to a telephone conference between FLB and Montgomery, FLB mailed a follow-up letter to Montgomery dated June 10, 1985, which Montgomery admitted he received. The letter provided that Montgomery's loan was to be placed in foreclosure if no payments were received by June 14, 1985. FLB's efforts to collect the indebtedness were in vain, and, thus, FLB proceeded to foreclosure on the deed of trust.

On June 21, 1985, the Secretary of State of the State of Mississippi issued a Charter of Incorporation to Choctaw Boundary Farms, Inc. of which Montgomery is corporate president and 60 per cent shareholder. On the same day, Montgomery executed a warranty deed conveying to Choctaw Boundary Farms, Inc. the real property which secures the indebtedness to the FLB. Three days later, on June 24, 1985, Choctaw Boundary Farms, Inc. filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi, Jackson Division.

FLB had no knowledge of these transactions until after they occurred and did not consent to the transfer of their security to Choctaw Boundary Farms, Inc. (Debtor) or to the Debtor's assumption of the indebtedness to FLB. However, the property having been conveyed to the Debtor and that corporation having invoked the automatic stay provisions of Section 362 by the filing of its petition in bankruptcy, the FLB was stayed from any further collection activity of its indebtedness through foreclosure proceedings.

As a result of the Chapter 11 petition, FLB filed a motion and later an amended motion for relief from the automatic stay. The Debtor filed an objection to the claim of FLB and the Debtor's objection and FLB's amended stay motion were both set for hearing.

**640**

## DISCUSSION

Examining the facts of this case and FLB's stay motion, the principal issue before the Court is whether substantial evidence exists to support a finding of "cause" to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

11 U.S.C. § 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, . . .

FLB contends that due to the facts and circumstances of this case, the Bankruptcy Court should render the Debtor's petition for reorganization a "bad faith" proceeding and enter an order granting FLB relief from the stay for "cause", finding that Choctaw Boundary Farms, Inc. lacked good faith in filing its petition.

The Fifth Circuit has addressed this very issue of when the "good faith" principle constitutes "cause" for lifting the automatic stay *In the Matter of Little Creek Development Company,* 779 F.2d 1068 (5th Cir. 1986). This Court finds it beneficial to reiterate a part of the opinion of the Fifth Circuit at length in order to fully encompass the background and reasoning for relying upon the "good faith" principle as "cause" for lifting the automatic stay.

*Little Creek* provides:

Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings. See *In re Victory Constr. Co.,* 9 B.R. 549, 551–60 (Bankr.C.D.Cal.1981) (containing an excellent historical survey). See, e.g., *Fidelity Assur. Assoc. v. Sims,* 318 U.S. 608, 621, 63 S.Ct. 807, 813–14, 87 L.Ed. 1032 (1943); *A–COS Leasing Corp. v. Wheless,* 422 F.2d 522, 523–25 & n. 1 (5th Cir.1970). Such a standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands." . . .

. . . Litigation concerning good faith which is pertinent to this case has arisen under § 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), governing relief from the automatic stay, and under 11 U.S.C. § 1112(b), which permits dismissal or conversion of a reorganization case. Both of these provisions allow relief to be granted "for cause," a term not defined in the statute so as to afford flexibility to the bankruptcy courts. See, e.g., *Victory Constr.,* 9 B.R. at 558–60 ("cause" is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process). Numerous cases have found a lack of good faith to constitute "cause" for lifting the stay to permit foreclosure or for dismissing the case.

Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources

of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria."

At 1071 thru 1073.

Comparing the facts of this case, the Court finds that practically all of the conditions *Little Creek* provides which constitute a finding of lack of good faith exists in this case before the Court. Evidence shows that the Debtor has only one asset consisting of the tract of property which is security for FLB's loan. FLB is the only secured creditor listed on the Debtor's schedules and there are no unsecured creditors listed. The evidence further shows that there appears to be no available sources of income to sustain a reorganization and there is no cash flow as the Debtor's checking account records indicate an initial deposit of $500 with no transactions and a current balance of $482.41 at the time of the hearing. The Court also finds that the Debtor has no paid employees, has not filed tax returns, has no sales taxes and does not keep journals, ledgers or any other type records.

Montgomery testified that he knew FLB was about to initiate foreclosure proceedings and that bankruptcy offered the only possibility of forestalling loss of the property. Montgomery admitted that he had transferred the property in order to stop the foreclosure knowing that the newly formed corporation would file bankruptcy.

The facts indicate that the Debtor is nothing more than an one-asset entity created on the eve of foreclosure in order to isolate insolvent property and its creditor. The creation of the Debtor fits the characteristics of the "new debtor syndrome" almost perfectly and thus exemplifies a bad faith filing.

■ However, the test of a debtor's good faith is not always whether there was a transfer of property and a change of entity just prior to the filing of the debtor's petition. The question is whether any substantive or procedural rights of creditors available prior to transfer have been changed by the transfer and subsequent filing. See *Duggan v. Highland-First Ave. Corp.*, 25 B.R. 955 (C.D.Calif.1982).

■ In this case, none of the other assets of Montgomery were transferred to the Debtor. Since these additional assets are not within the jurisdiction of the Court, the assets cannot possibly be used by the bankrupt estate in curing the default of the Debtor. To this point, Montgomery has been able to have the best of both worlds. He has been able to receive the benefits of the automatic stay provided by the Code and stop a foreclosure on a large tract of his land. At the same time, he has been able to retain personal control of his other considerable assets and has not had to bring them under the scrutiny of his creditors and control of this Court.

Thus, the Court finds that not only is the "new debtor syndrome" clearly evidenced but that the sole purpose of the transfer of property and subsequent Chapter 11 petition was to hinder and delay FLB in enforc-

ing their rights and abilities to proceed against all of its collateral.

### CONCLUSION

After examining the facts and considering the same, the Court finds that resorting to the protection of the Bankruptcy Code is not proper under the circumstances of this case and thus the Court concludes that Choctaw Boundary Farms, Inc. lacks good faith in the filing of its Chapter 11 petition. The Court further finds that the lack of good faith constitutes "cause" and therefore the Court determines that FLB's motion to remove the automatic stay is well taken and should be sustained pursuant to 362(d)(1). The Court also finds that due to the removal of the automatic stay, the Debtor's objection to claim of FLB is of no consequence and is rendered a moot issue.

IT IS, THEREFORE, ORDERED that the automatic stay is terminated and Federal Land Bank is authorized to fully enforce its rights as a lienholder.