[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11421

_____

D.C. Docket No. 8:17-cv-00985-VMC-TGW

MICHAEL L. KING,

Petitioner - Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 25, 2019)

Before MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

MARTIN, Circuit Judge:

Michael King, a Florida death row inmate, appeals the District Court's

denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus.  Mr. King has

raised three issues in this appeal: (1) whether trial counsel rendered ineffective

assistance of counsel for failing to preserve a challenge to a peremptory strike

under Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986) and J.E.B. v.

Alabama ex rel. T.B., 511 U.S. 127, 114 S. Ct. 1419 (1994); (2) whether trial

counsel rendered ineffective assistance of counsel for failing to investigate Mr.

King's exposure to toxic substances; and (3) whether the District Court violated

due process or otherwise abused its discretion by adopting portions of the State's

response brief in its order denying Mr. King's § 2254 petition.  After careful

consideration, and with the benefit of oral argument, we affirm the denial of Mr.

King's habeas petition.

## I. BACKGROUND AND PROCEDURAL HISTORY

Mr. King was convicted and sentenced to death in 2009 for the murder,

kidnapping, and involuntary sexual battery of Denise Amber Lee.  See King v.

State ("King I"), 89 So. 3d 209, 219 (Fla. 2012).  Mr. King's crimes against Mrs.

Lee were nightmarish.  The horrific nature of his crimes is not disputed, so we will

not elaborate on them here.  Rather, in this appeal we address whether the

performance of Mr. King's trial counsel was deficient and whether the District

Court erred when it incorporated portions of the State's response brief into its order.

A. RELEVANT TRIAL PROCEEDINGS

At his trial, Mr. King was represented by Carolyn Schlemmer, John Scotese, and Jerome Mesiner. See King v. State ("King II"), 211 So. 3d 866, 879 (Fla. 2017). Ms. Schlemmer had been working on death penalty cases "for the better part of 20 years" at the time she came to represent Mr. King. Mr. Scotese had handled one capital case and therefore met the qualifications to handle capital cases on his own, while Mr. Mesiner did not. See id. at 884.

During voir dire, the State moved to use a peremptory challenge of Juror 111, an African American woman. Mr. Scotese objected and asked for a "race neutral" justification for the strike. The State responded with:

> On Juror Number 111, she's an 18-year-old female. She came across as meek, young and inexperienced. She's the youngest on the panel we have existing so far. Her statement during the original death qualification was that living life in prison is more awful than a death sentence. Her brother has a pending felony drug charge. She watches the television show CSI. Commonly, a concern of ours is that they would hold us to a TV standard as opposed to a regular standard. And based on these foregoing reasons, we exercise our peremptory challenge on Number 111.

In response, the trial court stated that other jurors on the panel "watch CSI or watch Perry Mason or whatever." The State then asserted that "[our] race neutral reason, this is not a challenge for cause, she indicated that living a life in prison is

3

more awful than a death sentence."  The trial court explained that "[o]ther jurors have said the same thing."  In response, the State said it would "strike [the] other jurors . . . remaining on the panel that have said" life without parole is worse than the death sentence.

The trial court then repeated that Juror 111's brother "has a pending . . . criminal charge" and the State confirmed this was true.  Thus, the trial court found that Juror 111's brother's pending drug charge was "a genuine race neutral reason" for removing Juror 111 from the jury, and overruled Mr. Scotese's objection to the State's peremptory challenge.

Also relevant to this appeal is the penalty-phase evidence of Mr. King's mental health.  Mr. King offered the testimony of Dr. Joseph Chong Sang Wu, who conducted a PET scan and concluded that Mr. King had a traumatic brain injury. King II, 211 So. 3d at 876.  Dr. Wu testified that people who suffer frontal lobe injuries are more likely to have poor judgment, exhibit blunted affect, take excessive risks, have difficulty regulating impulses such as aggression, and have difficulty separating fantasy from reality.  Id. at 876–77.  According to Dr. Wu, Mr. King's "most recent verbal IQ score placed him in the borderline retarded range."  Id. at 877.  Mr. King also presented the testimony of Dr. Kenneth Visser, who performed an IQ test on Mr. King.  That testing of Mr. King produced a verbal IQ score of 71, a performance IQ score of 85, and a full-scale IQ of 76.  Id.

4

Dr. Visser testified that this placed King in the borderline intellectual functioning range.  Id.

Ultimately, the jury unanimously recommended a sentence of death.  King II, 211 So. 3d at 878.  The trial court found the existence of two statutory mitigating circumstances: (1) Mr. King's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was substantially impaired (moderate weight), and (2) his age, thirty-six (little weight).  Id.  The trial court further found that Mr. King had established thirteen nonstatutory mitigating circumstances.  See id. at 878–79.  Nonetheless, the trial court found that the State proved four aggravating circumstances beyond a reasonable doubt and sentenced Mr. King to death.  Id. at 878.

B. DIRECT APPEAL

On direct appeal, the Florida Supreme Court affirmed Mr. King's convictions and death sentence.  King I, 89 So. 3d at 212.  The United States Supreme Court denied his petition for writ of certiorari on October 15, 2012.  King v. Florida, 568 U.S. 964, 133 S. Ct. 478 (2012).

C. STATE COLLATERAL PROCEEDINGS

In September 2013, Mr. King filed a motion for postconviction relief in the trial court under Florida Rule of Criminal Procedure 3.851.  In his Rule 3.851 motion, Mr. King argued, among other things, that his trial counsel was ineffective

for failing to investigate and present evidence regarding his exposure to toxic substances and for failing to properly preserve a Batson/J.E.B. challenge for direct appeal.  After conducting an evidentiary hearing, the state postconviction court issued a written order denying relief in August 2014.  The Florida Supreme Court affirmed the denial of relief in January 2017, King II, 211 So. 3d at 870–71, and denied his motion for rehearing on March 13, 2017.

## D. FEDERAL HABEAS PROCEEDINGS

Mr. King filed his § 2254 petition in the District Court on April 27, 2017. He sought relief on six grounds.  For our purposes, Mr. King raised both of his ineffective assistance of counsel claims and asserted that the Florida Supreme Court's resolution of those claims was contrary to Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  In particular, Mr. King argued that his trial counsel was ineffective for failing to investigate the effects of the toxins Mr. King was exposed to during his childhood and in his job as a plumber.  He also raised the Batson/J.E.B. issue again.

The District Court denied habeas relief and held that the Florida state courts reasonably applied Strickland in ruling that Mr. King failed to establish that his trial counsel's failure to investigate his exposure to toxic substances was deficient. The District Court found that trial counsel consulted several experts to ascertain whether Mr. King suffered any neurological disorders.  Further, one of these

6

experts discussed Mr. King's exposure to toxins from rat poisoning and crack pipe fumes, but, at the time of trial, neither Mr. King, his family, the investigator, nor the medical experts alerted Mr. King's trial counsel to the possible exposure of toxic chemicals from growing up near farms or from his plumbing career. As a result, the District Court held that Mr. King's trial counsel had no reasonable basis for further toxin exposure investigation, so was not ineffective. The District Court also ruled Mr. King's trial counsel was not ineffective for failing to preserve the Batson/J.E.B. challenge for direct appeal because there was evidence that Mr. King's trial counsel did not want Juror 111—the juror at issue—on the jury.

## II. STANDARD OF REVIEW

A. HABEAS STANDARDS

Under § 2254, a prisoner held "in custody pursuant to the judgment of a State court" may seek habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Generally, a prisoner must first "fairly present" his federal claims to the state court and exhaust his state court remedies before seeking federal habeas relief. Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (alteration adopted and quotation marks omitted). When a state court has adjudicated a prisoner's claims on the merits, this Court's review is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, this

7

Court may not grant habeas relief with respect to such a claim unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The AEDPA standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013) (en banc) (quotation marks omitted). A decision "is not 'contrary to' federal law unless it contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." Id. (quotation marks omitted). A state court's decision is not "an unreasonable application of federal law unless the state court identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply." Id. (citation omitted). When assessing a § 2254 petition under AEDPA, we do not ask whether the state court decision is correct, but rather whether it is reasonable. Id.

8

A district court's denial of a habeas corpus petition is reviewed de novo. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010). "It is the petitioner's burden to establish his right to habeas relief[,] and he must prove all facts necessary to show a constitutional violation." Blankenship v. Hall, 542 F.3d 1253, 1270 (11th Cir. 2008) (citation omitted). The state court's factual determinations are entitled to a presumption of correctness, and Mr. King bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARDS UNDER AEDPA

To establish a case of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient and (2) his defense was prejudiced by the deficient performance. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. There is a strong presumption that counsel's performance "falls within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. at 2065. Trial counsel's performance will not be considered deficient unless counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professional competent assistance." Id. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. If a petitioner

9

fails to make a sufficient showing on either prong of the inquiry, his ineffective assistance of counsel claim fails. Id. at 687, 104 S. Ct. at 2064.

AEDPA adds another layer of deference to the Strickland analysis. See, e.g., Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010). To prevail on either of his ineffective assistance of counsel claims, Mr. King must therefore establish that (1) he has satisfied the elements of the Strickland standard and (2) that the State court applied Strickland in a manner that was contrary to, or involved an unreasonable application of clearly established Supreme Court precedent, or that the State court applied Strickland to facts it unreasonably determined. See id.

## III. DISCUSSION

A. INEFFECTIVE ASSISTANCE – BATSON/J.E.B. CLAIM

We begin with Mr. King's ineffective assistance of counsel claim regarding the State's peremptory strike of Juror 111. He first argues that the Florida Supreme Court's determination that Ms. Schlemmer strategically chose to forgo a challenge to Juror 111 was an unreasonable determination of the facts under our decision in Davis v. Sec'y for Dept. of Corr., 341 F.3d 1310 (11th Cir. 2003).[1] He

---

[1] Mr. King also asserts that the Florida Supreme Court "was not able to complete an adequate review of the Batson claim on direct appeal" because he claims his trial counsel was otherwise deficient in (1) failing to identify the race of similarly situated jurors; (2) failing to correct the trial court and the prosecutor's misunderstanding of Juror 111's questionnaire; (3) failing to conduct a comparative juror analysis; and (4) failing to raise a J.E.B. challenge to the State's peremptory strike of Juror 111. We decline to address these arguments because our resolution of Mr. King's Batson claim renders them moot. In particular, as we explain below, we conclude that we must affirm the District Court's determination of Mr. King's Batson claim

10

points out that after the State sought to use a peremptory strike on Juror 111, Ms. Schlemmer stated that "we just have an issue" and Mr. Scotese raised the objection. Mr. King says this record shows that Ms. Schlemmer sought to object to the State removing Juror 111 from the jury. Mr. King also maintains that Ms. Schlemmer inappropriately offered post hoc rationalizations for her decision under Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527 (2003). Under the governing standards, these arguments fail.

Mr. King has not shown that the Florida Supreme Court's assessment of trial counsel's performance is contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. On this record, the Florida Supreme Court's determination that Mr. King's trial counsel made a tactical decision to allow the State to strike Juror 111 was not unreasonable. The Florida Supreme Court noted Ms. Schlemmer's testimony that although she did not have a specific recollection of the jury selection, based on the large "NO" written next to notes about Juror 111 she did not want Juror 111 on the panel. Based on this, she implied that further pressing of a Batson challenge was unnecessary. Further, even if Ms. Schlemmer was not the person who wrote "NO" next to the entry for Juror 111, Ms. Schlemmer was lead counsel during jury

_____

because the State court's determination that trial counsel's decision not to press the Batson claim was a permissible strategic one, was not contrary to or an unreasonable application of clearly established federal law, and it was not based on an unreasonable determination of the facts.

11

selection and oversaw the objections raised by others on her team. Thus the Florida Supreme Court reasonably determined that, as a matter of trial strategy, Mr. King's trial counsel made a decision to allow the State to strike Juror 111. In other words, the Florida Supreme Court did not apply the facts in an objectively unreasonable manner when it rejected Mr. King's Batson/J.E.B. claim. 28 U.S.C. § 2254(d). And it did not unreasonably apply Strickland when it denied Mr. King's claim because under Strickland, an attorney does not perform incompetently when, as here, she makes a strategic decision that other competent attorneys might have made.

We need not address the merits of Mr. King's prejudice argument because he failed to make a showing of deficient performance. See Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (noting "a court need not address both prongs if the defendant has made an insufficient showing on one").

B. INEFFECTIVE ASSISTANCE – TOXIN EXPOSURE EVIDENCE

Mr. King next argues his trial counsel was ineffective during the penalty phase of his trial because she failed to investigate and present evidence showing Mr. King was exposed to harmful toxins throughout his life. Mr. King says that, had his trial counsel investigated and presented evidence of his exposure to toxic substances, that evidence would have explained Mr. King's behavior and provided an additional explanation of his low IQ and brain injury. In particular, Mr. King

12

claims "the deficient performance in this case stems not from the complete lack of investigation or consultation with experts, but rather from a lack of consultation with an expert specifically tailored to the needs of Mr. King's case."

As set out above, the Florida Supreme Court noted that trial counsel consulted several experts to ascertain whether Mr. King suffered any neurological disorders.  The Court noted further that, at the time of trial, neither Mr. King, his family, the investigator, nor the medical experts alerted Mr. King's trial counsel to his possible exposure of toxic chemicals from growing up near farms or in the course of his plumbing career.  King II, 211 So. 3d at 882–83.  The record supports this assessment by the Florida Supreme Court.  Ms. Schlemmer testified she consulted with seven psychologists, one of whom reported no neurotoxic exposure.  And, during her investigation, Mr. King reported only exposure to the possible toxic substance of "crack pipe fumes," "marijuana," and "rat poison."  The Florida Supreme Court reasonably summarized trial counsel's investigation and noted that "[t]hrough her persistence, [Ms.] Schlemmer was able to present some mitigating mental health evidence via the testimony of Dr. Wu."  King II, 211 So. 3d at 882.  Given these facts, and viewing counsel's performance through the lens of AEDPA deference, we conclude that the scope of trial counsel's investigation was reasonable.  See Strickland, 466 U.S. at 699, 104 S. Ct. at 2070 (holding that "counsel made a strategic choice to argue for the extreme emotional distress

13

mitigating circumstance" and that "strategy choice was well within the range of professionally reasonable judgments"); Williams v. Allen, 598 F.3d 778, 793–94 (11th Cir. 2010) (holding counsel's presentation of voluntary intoxication evidence was not deficient and, by failing to "demonstrate[] that counsel needed to argue further," petitioner could not show counsel's strategy was unreasonable); see also Newland v. Hall, 527 F.3d 1162, 1202 (11th Cir. 2008) ("In evaluating the reasonableness of a defense attorney's investigation, we weigh heavily the information provided by the defendant.").

## C. DUE PROCESS CLAIM

Finally, Mr. King argues that the District Court violated his due process rights and abused its discretion by incorporating portions of the State's response brief into its order denying Mr. King's § 2254 petition. This argument fails as well, however, because a court's adoption of portions of a party's brief does not render its decision fundamentally unfair.

We caution district courts against this practice. However, the findings contained in the District Court's order, "though not the product of the workings of the district judge's mind, are formally [hers]; they are not to be rejected out-of-hand, and they will stand if supported by evidence." United States v. El Paso Natural Gas, 376 U.S. 651, 656, 84 S. Ct. 1044, 1047 (1964). There is no evidence here "that the process by which the [District Court] arrived at [the decision] was

14

fundamentally unfair." See In re Colony Square Co., 819 F.2d 272, 276 (11th Cir. 1987) (holding that orders drafted by a litigant without notice to the opposing party are not automatically invalid). This is not a case in which the District Court issued a "one-sentence summary denial[]," depriving us the opportunity to conduct meaningful appellate review. Danley v. Allen, 480 F.3d 1090, 1091 (11th Cir. 2007) (holding district court orders "should contain sufficient explanations of their rulings"). On the contrary, the District Court set forth its reasons for denying each of Mr. King's six claims in a 91-page order. We do not view the District Court's actions as depriving Mr. King of his right "to an impartial and disinterested tribunal." Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 1613 (1980); see also Williams v. Pa., ___ U.S. ___, 136 S. Ct. 1899, 1909 (2016) ("Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements."). Because the District Court's adoption of portions of the State's brief in its opinion did not deprive Mr. King of a fair and impartial tribunal, we must deny Mr. King's claim.

## IV. CONCLUSION

The Florida Supreme Court's assessment of Mr. King's trial counsel's performance was not contrary to or an unreasonable application of federal law. Mr. King cannot, therefore, prevail on either of his ineffective assistance of counsel claims. Also, although we do not endorse district courts indiscriminately

15

incorporating a party's brief into their orders, there is no prohibition on the District Court from including in its order portions of a party's brief that are supported by the evidence.

**AFFIRMED.**